UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY POWELL, | CASE NO. 1:17-cv-00301-MJS (PC) |
| Plaintiff, | **ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| v. | **(ECF NO. 1)** |
| J. SUTTON, et al., | |
| Defendants. | **AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. His March 3, 2017 complaint is before the Court for screening. (ECF No. 1.)

**I.  Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim

on which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) That a right secured by the Constitution or laws of the United States was violated; and (2) That the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Iqbal, at 677-78.

**III.     Plaintiff's Allegations**

Plaintiff is currently incarcerated at California State Prison in Corcoran, California ("CSP-COR"). Before his transfer to CSP-COR, Plaintiff was imprisoned at Wasco State Prison in Wasco, California ("WSP"). The acts giving rise to his complaint occurred at both WSP and CSP-COR. He brings this suit against the following Defendants: (1) John Sutton, Warden at WSP; (2) J.D. White, Associate Warden at WSP; (3) K. Carpenter; WSP Correctional Counselor; and R. Alcala, WSP Correctional Counselor.

Plaintiff's allegations may be summarized essentially as follows:

Throughout the time of the acts giving rise to his complaint, Plaintiff was at the Correctional Clinical Case Management System ("CCCMS") level of care. On September 15, 2015, Plaintiff was transferred from the general population at WSP and placed in Administrative Segregation ("AdSeg") for "battery on an inmate resulting in serious bodily injury." On September 24, 2015, Plaintiff appeared before an Institutional Classification Committee ("ICC") with Defendants Sutton, Carpenter, and Alcala. Here, Defendants informed Plaintiff he would "be disciplined" by transfer to a Security Housing Unit ("SHU") "for up to sixteen months if found guilty at a prison disciplinary hearing." Defendants then referred Plaintiff's case to a California Department of Corrections and Rehabilitation ("CDCR") Classification Services Representative for a "180 day retention" in AdSeg pending the outcome of a Rules Violation Report ("RVR").

About 129 days later, on or around January 21, 2016, Plaintiff was transferred, "without notice," to SHU at CSP-COR. Plaintiff claims he was transferred to SHU "without ever being issued a RVR, being found guilty thereof, or ever being afforded a disciplinary hearing." Plaintiff remained in SHU until approximately February 1, 2016. While in SHU, Plaintiff suffered from sleep deprivation and suicidal ideation. Plaintiff notes that the lights at CSP-COR SHU are "programmed to remain on all day and night," and that "prisoners yell and scream throughout all hours," preventing him from sleeping. As a result, Plaintiff suffered from suicidal tendencies, stress, anxiety, migraines, weight loss, sleep deprivation, and indignity. Plaintiff alleges that his transfer constituted "torture" and

3

"corporal punishment."

Shortly after his transfer to SHU at CSP-COR, Plaintiff submitted "CDCR Form-22" to prison officials at CSP-COR concerning his transfer to SHU. Plaintiff claims a non-party CSP-COR officer told Plaintiff he was "checking into why [Plaintiff was] transferred to SHU and not [AdSeg]."

Plaintiff filed two grievances in January and February 2016 concerning his transfer to SHU at CSP-COR. The first was "never answered or responded to," while the second resulted in an interview with Defendant Carpenter, where Carpenter "denied the relief sought" by Plaintiff. Plaintiff claims Defendant Carpenter informed Plaintiff he was transferred to CSP-COR to give Plaintiff "additional out of cell time/activities and increased mental health treatment programs." However, Plaintiff alleges no such programs or treatment were provided to Plaintiff while he was in SHU, and Plaintiff does not believe any such programs were being implemented at CSP-COR SHU during the time the acts giving rise to his complaint occurred.

Plaintiff brings suit against Defendants for violation of his Fourteenth and Eighth Amendment rights to due process, equal protection, and to be free from cruel and unusual punishment. He seeks declaratory relief and money damages.

**IV.    Discussion**

**A.    Linkage**

Under § 1983, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his or her rights. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, 609 F.3d 1011, 1020-21(9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). A plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Moreover, liability may not be imposed on supervisory personnel under the theory

4

of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff alleges that the named Defendants "intentionally disregarded Plaintiff's right to due process and equal protection" by transferring him to SHU at CSP-COR. However, such allegations are insufficient to show that each of the Defendants "personally participated" in a deprivation of Plaintiff's rights. Plaintiff fails to set forth specific facts as to each individual Defendant's role in the asserted deprivations. Accordingly, claims against the named Defendants will be dismissed and Plaintiff will be given leave to amend.

**B.  Equal Protection**

The Fourteenth Amendment's Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on that plaintiff's membership in a protected class. Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). Alternatively, an equal protection violation may be shown when similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate government purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has failed to assert a cognizable equal protection claim. Plaintiff makes no allegations that would support a finding that he belongs to a protected class or that

Defendants intentionally discriminated against him because of that class status. Plaintiff also fails to allege sufficient facts to show that similarly situated individuals were intentionally treated differently by Defendants. Plaintiff's equal protection claim will be dismissed with leave to amend.

**C.     Inadequate Medical Care**

Plaintiff alleges that he was "deprived of access to mental health programs and services" to help him manage "anxiety, depression, and suicidal [tendencies]." If Plaintiff intends to bring a claim for inadequate medical care based on these allegations, he must meet the following pleading requirements.

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits deliberate indifference to the serious medical needs of prisoners. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992). A claim of medical indifference requires: (1) A serious medical need; and (2) A deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met by showing: (a) A purposeful act or failure to respond to a prisoner's pain or possible medical need; and (b) Harm caused by the indifference. Id. Where a prisoner alleges deliberate indifference based on a delay in medical treatment, the prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). Delay which does not cause harm is insufficient to state a claim of deliberate medical indifference. Shapley, 766 F.2d at 407 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment,

no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson, 290 F.3d at 1188). Mere indifference, negligence, or medical malpractice is insufficient to support the claim. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). A prisoner can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment for reasons unrelated to the prisoner's medical needs. See Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992); Estelle, 429 U.S. at 105.

If Plaintiff wishes to make a claim based on the alleged deprivation of access to mental health care while in SHU, he must link the alleged deprivation to a specific Defendant and show that Defendant knew of and was deliberately indifferent to a serious medical need. Plaintiff will be given leave to amend.

### D. Cruel and Unusual Punishment

Plaintiff alleges violations of the Eighth Amendment, which protects prisoners from cruel and unusual punishment in the form of inhumane conditions of confinement. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). A conditions-of-confinement claim has both an objective and a subjective component. See Farmer, 511 U.S. at 834. "First, the deprivation alleged must be . . . sufficiently serious" and must "result in the denial of the minimal civilized measure of life's necessities." Id. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). Second, the prison official must have acted with "deliberate indifference" to a substantial risk of serious harm to the inmate. Farmer, 511 U.S. at 834. "Mere negligence is not sufficient to establish liability." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Rather, a plaintiff must set forth facts to show that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

### 1. CCCMS Level of Care and Plaintiff's Mental Health

Plaintiff alleges he was at the CDCR's CCCMS level of care during the time the alleged deprivations occurred. Specifically, Plaintiff alleges he was "deprived of access to mental health programs and services needed to combat and manage anxiety, depression, and suicidal [tendencies]" because no such care was provided to inmates at CSP-COR's SHU.

There are four levels of care in the CDCR Mental Health Delivery System. See Coleman v. Schwarzenegger, 922 F. Supp. 2d 883, 903 (E.D. Cal. 2009). One of them is CCCMS, which provides inmates "routine outpatient care." Id. In a limited ruling, the court in Coleman v. Brown noted that "there are many seriously mentally ill inmates at the CCCMS level of care who cannot be housed in any SHU in California without running afoul of the Eighth Amendment," but that "it is not clear that this is true for all inmates at the CCCMS level of care." 28 F. Supp. 3d 1068, 1107 (E.D. Cal. 2014). To protect against such violations, the Coleman v. Brown court prohibited defendants from housing "seriously mentally ill" inmates in SHU without the inmate's treating clinician certifying that: (1) The inmate's behavior leading to SHU assignment was not the product of mental illness; (2) The inmate's mental illness can be safely and adequately managed in SHU; and (3) The inmate does not face a substantial risk of exacerbation of his or her mental illness or decompensation as a result of confinement in SHU. Id. Although the Coleman v. Brown injunction was limited to the class of plaintiffs in that case, the decision indicates that placing such inmates in SHU without adequate assurances from their treating clinicians risks violating the Eighth Amendment and may constitute cruel and unusual punishment.[1]

---

[1] However, the failure to follow such procedures is not, in itself, sufficient to show an Eighth Amendment violation. See Cagle v. Sutherland, 334 F.3d 980, 986-87 (9th Cir. 2003) (emphasizing that, because consent decrees often go beyond the minimum requirements of the Constitution and do not create or expand constitutional rights, a § 1983 claim cannot be based solely on a violation of such an order); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986) (noting that remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights). Furthermore, relief for violation of consent decrees or remedial plans must be pursued in the case in which the decree or plan was issued. Frost v. Symington, 197 F.3d 348, 358-59 (9th Cir. 1999); see also Crayton v. Terhune, No. C 98-4386 CRB (PR),

Here, Plaintiff has not alleged that he is a seriously mentally ill prisoner who cannot constitutionally be confined in SHU under any circumstances. He also has failed to identify a Defendant who, with deliberate indifference to Plaintiff's needs, was responsible for placing him in SHU. Thus, Plaintiff has failed to allege facts sufficient to give rise to a cognizable claim. Plaintiff will be given leave to amend.

### 2. Continuous Lighting in CSP-COR SHU

Plaintiff alleges lights in SHU "are programmed to remain on all day and night." If Plaintiff intends to bring a cruel and unusual punishment claim for being exposed to continuous lighting in SHU at CSP-COR, he must meet the following pleading requirements.

The Ninth Circuit Court of Appeals has held that "[a]dequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." See Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985). With respect to continuous lighting, the Ninth Circuit in Keenan v. Hall held that a triable issue of fact existed where a prisoner was subjected to continuous and uninterrupted lighting 24 hours a day for six months, and where the plaintiff claimed the lighting caused him "'grave sleeping problems'" and other psychological issues. 83 F.3d 1083, 1088-91 (9th Cir. 1996). Keenan did not address more minimal exposure to continuous lighting, such as the approximately twelve days presented here. In Grenning v. Miller-Stout, however, the Ninth Circuit reversed a district court's grant of summary judgment against a plaintiff alleging violation of the Eighth Amendment's bar against cruel and unusual punishment when he was subjected to constant lighting for thirteen days. 739 F.3d 1235, 1240-42 (9th Cir. 2014).

Conditions in which lights remain on "all day and all night" may be sufficiently serious to constitute the denial of the "minimal civilized measure of life's necessities." See id. at 1070 (noting that "conditions having the mutually reinforcing effect of depriving a

---

2002 WL 31093590, at *4 (N.D. Cal. Sept. 17, 2002) ("[A] civil rights action is not the proper means by which to enforce a remedial decree.").

9

prisoner of a single basic need, such as sleep, may violate the Eighth Amendment); see also Gilcrist v. Kautzky, No. 88-3869, 1989 WL 61761, at *2 (9th Cir. June 2, 1989) (reversing dismissal and holding that prisoner alleging deprivation of sleep, "a minimal necessity of life," due to twenty-four hour lighting alleged facts sufficient to state an Eighth Amendment claim).

If Plaintiff wishes to make a claim based on his continuous lighting allegations, he must link the alleged deprivation to a specific Defendant and show that Defendant knew of and was deliberately indifferent to a substantial risk of serious harm (i.e., knew of, but disregarded, an excessive risk to Plaintiff's safety). He has not done so here. Plaintiff will be given leave to amend.

### E. Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause does not confer on inmates a liberty interest in being confined in the general prison population instead of segregation. See id. at 466-68. Liberty interests created by state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff alleges that his Fourteenth Amendment rights were violated when prison officials transferred Plaintiff to SHU at CSP-COR and, separately, when prison officials failed to answer or respond to his first grievance. Additionally, although unclear from the face of the complaint, the Court proceeds on the assumption Plaintiff also intends to bring a due process claim with respect to his confinement in AdSeg at WSP. Accordingly, the Court analyzes all of Plaintiff's due process claims separately, beginning with Plaintiff's

right to due process in relation to his transfer to AdSeg at WSP, followed by his transfer to CSP-COR SHU, and concluding with his allegations related to the filing of grievances.

**1. Due Process With Respect to Plaintiff's Transfer to AdSeg at WSP**

The Ninth Circuit has held that due process for AdSeg requires only an informal, nonadversary hearing within a reasonable time after the prisoner is segregated, notice to the prisoner of the reasons for segregation, and an opportunity to the prisoner to present his or her views. Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), overruled on other grounds by Sandin, 515 U.S. at 481-84.

Plaintiff has failed to allege that he was denied an informal, non-adversary hearing and an opportunity to present his views. Rather, Plaintiff notes that he was seen by Defendants Sutton, Carpenter, and Alcala shortly after being placed in AdSeg. He was also given notice of the reasons for being placed in AdSeg: "Battery on an inmate resulting in serious bodily injury." Plaintiff's due process claim with respect to his confinement in AdSeg is thus dismissed with leave to amend.

**2. Due Process With Respect to Plaintiff's Transfer to CSP-COR SHU**

Prison disciplinary proceedings are not part of a criminal prosecution. Wolff, 418 U.S. at 556. Thus, the full set of rights typically due a defendant in a criminal prosecution do not apply to disciplinary proceedings. Id. Instead, the minimum procedural requirements that must be met in such proceedings are: (1) Written notice of the charges; (2) At least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) A written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) The right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) Legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin, 515 U.S. at 472.

In addition, "some evidence" must support the decision of the hearing officer, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). However, the "some evidence" standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." Hill, 472 U.S. at 455-56 (emphasis added).

Plaintiff claims he was in SHU at CSP-COR from around January 21, 2016 until about February 1, 2016, approximately twelve days. He alleges this transfer took place without a disciplinary hearing.

Plaintiff was charged with "battery on an inmate resulting in serious bodily injury" and was told he would "be disciplined." Thus, it appears Plaintiff's placement in SHU was for disciplinary purposes. Plaintiff alleges he was placed in SHU (after having been placed in AdSeg) without prior notice or being afforded a disciplinary hearing. Such treatment may show that Plaintiff was not afforded the minimum procedural requirements set forth in Wolff. 418 U.S. at 556; see also Taylor v. Koon, 682 F. Supp. 475, 477-78 (D. Nev. 1988) (holding that placement of prisoner in disciplinary detention, where prisoner was already in AdSeg, prior to notice and hearing violated procedural due process). However, a relatively brief term in solitary confinement, in itself, has been held not to implicate the Due Process Clause because "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 484.

At this stage, the Court will not determine whether Plaintiff's allegations are sufficient since he has failed to link them to any Defendant. He has not set forth specific facts with respect to any Defendant's role in the deprivation of his due process rights. Accordingly, Plaintiff's claim alleging violation of his right to due process with respect to his confinement in SHU at CSP-COR will be dismissed with leave to amend.

### 3. Due Process With Respect to Plaintiff's Filing of Grievances

Plaintiff's allegations regarding the administrative grievance process appear intended to excuse his failure to administratively exhaust his claims. To the extent he also intends to base a due process claim on these allegations, he fails to state a cognizable claim.

The Due Process Clause protects plaintiffs against the deprivation of liberty without the procedural protections to which they are entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, plaintiffs have no stand-alone due process rights related to the administrative grievance process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Failing to properly process a grievance does not constitute a due process violation. See, e.g., Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (holding that plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim); Williams v. Cate, No. 1:09-cv-00468-OWW-YNP PC, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims.").

The denial of a prisoner's administrative appeal generally does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, prison administrators may not willfully turn a blind eye to constitutional violations being committed by subordinates. Penner, 439 F.3d at 1098. Thus, there may be limited circumstances in which those involved in reviewing an inmate appeal may be held liable under § 1983.

No such circumstances are presented here. Plaintiff presents only limited facts regarding his grievances. The Court is unable to conclude the reviewing officials willfully turned a blind eye to constitutional violations. Plaintiff will be given leave to amend.

### F. Declaratory Relief

Plaintiff seeks a declaration stating that his rights were violated. However, because his claims for damages necessarily entail a determination of whether his rights

13

were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n. 8 (9th Cir. 2005). Accordingly, Plaintiff's claim for declaratory relief will be dismissed.

**V.   Conclusion**

Plaintiff's complaint fails to state a claim on which relief may be granted. The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's claim for declaratory relief is DISMISSED;
2. Plaintiff's complaint is DISMISSED for failure to state a claim on which relief may be granted;
3. The Clerk's Office shall send Plaintiff a blank civil rights complaint form and a copy of his complaint, filed March 3, 2017;

14

4. Within thirty (30) days from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal; and

5. If Plaintiff fails to file an amended complaint or notice of voluntary dismissal, this action will be dismissed, with prejudice, for failure to comply with a court order and failure to state a claim.

IT IS SO ORDERED.

Dated: May 11, 2017 /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE